UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GENE F. MUMMERY, | ) | No.  EDCV 06-536-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On May 24, 2006, Gene F. Mummery ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Supplemental Security Income benefits.  On June 30, 2006, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On July 24, 2006, Michael J. Astrue ("defendant") filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on February 15, 2007, defendant filed an Answer to the Complaint.  On April 30, 2007, the parties filed their Joint Stipulation.

The matter is now ready for decision.

**BACKGROUND**

On March 8, 2002, plaintiff filed his initial application for Supplemental Security Income benefits. (Administrative Record ["AR"] at 70-72). Plaintiff alleged that beginning in March 1992, he was unable to work because he suffered from chronic repetitive pain syndrome and depression. (AR at 75). The Commissioner denied plaintiff's application for benefits, initially and upon reconsideration. (AR at 54-57, 60-63). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 64).

On April 3, 2003, an ALJ conducted a hearing in San Bernardino, California. (See AR at 30-47). Plaintiff appeared at the hearing with counsel and testified. Id. In addition, Kenneth Mummery, plaintiff's father, testified at the hearing. (See AR at 42-45).

On July 16, 2003, the ALJ issued his decision denying Supplemental Security Income payments. (AR at 12-22). In his decision, the ALJ found that plaintiff was "capable of performing medium work", and that plaintiff's mental condition was "durationally "non-severe." (AR at 17, 19). On May 19, 2004, the appeals council denied plaintiff's request for review. (AR at 3-5).

Thereafter, plaintiff filed a civil complaint in case no. EDCV 04-859 (JTL). On July 8, 2005, the matter was remanded to the Social Security Administration pursuant to a Judgment for remand. (AR at 378). On August 31, 2005, the appeals counsel remanded the case for further proceedings. (AR at 379-382).

On December 20, 2005, a second hearing was conducted by an ALJ in San Bernardino, California. (See AR at 532-558). Plaintiff appeared at the hearing with counsel and testified. Id. In addition, two medical experts, Samul Landau and Joseph Malancharuvil, and one

2

1 vocational expert, Abbe May, testified at the hearing. (See AR at
2 532-558).
3 　　　On March 20, 2006, the ALJ issued his decision denying
4 Supplemental Security Income payments. (AR at 311-321). In his
5 decision, the ALJ found that plaintiff was not disabled under the
6 Social Security Act at any time through the date of the decision. (AR
7 at 321).
8 　　　Thereafter, plaintiff appealed to the United States District
9 Court.

## PLAINTIFF'S CONTENTIONS

11 　　　Plaintiff makes the following claims:
12 　　　1.　The ALJ failed to give proper weight to the opinion of the
13 treating physician.
14 　　　2.　The ALJ did not properly consider the lay witness testimony
15 given by plaintiff's father, Kenneth Mummery.
16 　　　3.　The ALJ improperly determined that plaintiff could perform
17 certain occupations given plaintiff's residual functional capacity.

## STANDARD OF REVIEW

20 　　　Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision
21 to determine whether the ALJ's findings are supported by substantial
22 evidence and whether the proper legal standards were applied. DeLorme
23 v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence
24 means "more than a mere scintilla" but less than a preponderance.
25 Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94
26 F.3d 520, 521-22 (9th Cir. 1996).
27 　　　Substantial evidence is "such relevant evidence as a reasonable
28 mind might accept as adequate to support a conclusion." Richardson,

3

1  402 U.S. at 401.  This Court must review the record as a whole and
2  consider adverse as well as supporting evidence.  Morgan v. Comm'r,
3  169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to
4  more than one rational interpretation, the ALJ's decision must be
5  upheld.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**DISCUSSION**

**A.   The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or...can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the defendant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Parra, 481 F.3d

4

at 746. If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity. <u>Parra</u>, 481 F.3d at 746.

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits. <u>Id.</u> Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1114 (9th Cir. 2006).

**B.   <u>THE ALJ'S CONSIDERATION OF THE TREATING PHYSICIAN'S OPINION</u>**

Plaintiff contends that the ALJ did not properly consider the opinion of Waheed A. Saeed, M.D., a psychiatrist with Riverside County Mental Hospital, who treated plaintiff from March 2003 to April 2003. Plaintiff contends that because Dr. Saeed's narrative report was ambiguous with respect to his opinion of plaintiff's mental condition absent polysubstance abuse, this alleged ambiguity triggered the ALJ's duty to develop the record. In his decision, the ALJ noted that Dr. Saeed found that plaintiff had no ability to sustain concentration or sustain repetitive tasks over an extended period, and that he was unable to adapt to new or stressful situations due to ongoing mood symptoms of his depression with his concurrent use of marijuana. (AR at 319). While this was consistent with the overall medical evidence when considering plaintiff's polysubstance abuse, the ALJ found that there was no indication of what plaintiff's functional ability was

absent polysubstance abuse. (AR at 319). Accordingly, the ALJ gave Dr. Saeed's opinion little probative weight. Id.

More weight is given to the opinion of a treating physician than that of a nontreating physician because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995). The ALJ may reject an uncontroverted opinion of a treating physician only for clear and convincing reasons. Id. at 1041. Where the opinion of the treating physician is contradicted by another doctor, the opinion of the treating physician may not be rejected without providing specific and legitimate reasons supported by substantial evidence in the record for doing so. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

In a social security case, an ALJ has an independent duty to fully and fairly develop the record and assure that the plaintiff's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 1991). This duty exists even when the claimant is represented by counsel. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). When the evidence is ambiguous, or if the ALJ finds that the record is inadequate to allow for proper evaluation of disability, the ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate inquiry." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). Although the ALJ has a duty to develop the record, the burden of proving disability remains on the claimant. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

In this case, plaintiff argues that the ALJ's statement that Dr. Saeed's opinion provides "no indication of what the plaintiff's functional ability is without polysubstance abuse" is sufficiently

6

1  ambiguous to trigger the ALJ's duty to resolve the issue of
2  plaintiff's functional capacity absent polysubstance abuse.
3  Defendant, however, argues that there was no ambiguity in Dr. Saeed's
4  report because there was no basis on which Dr. Saeed could assess
5  plaintiff's functional capacities in the absence of drug and alcohol
6  abuse, and it would have been futile to ask him for such an
7  assessment.
8       Under the 1996 amendment to the Contract with America Advancement
9  Act ("CAAA"), a claimant cannot receive disability benefits "if
10 alcohol or drug addiction would ... be a contributing factor material
11 to the Commissioner's determination that the individual is disabled."
12 42 U.S.C. § 423(d)(2)(c); Ball v. Massanari, 254 F.3d 817, 819-20 (9th
13 Cir. 2001).  It is the claimant's burden to resolve any ambiguity
14 regarding whether alcoholism or drug addiction is a contributing
15 factor material to the determination that he or she is disabled.
16 Parra, 481 F.3d at 748 (placing the burden on the claimant is
17 consistent with the general rule that at all times the burden is on
18 the claimant to establish his entitlement to disability insurance
19 benefits, and is practical because claimant is the party best suited
20 to demonstrate whether he would still be disabled in the absence of
21 drug or alcohol addiction).
22      The purpose of the CAAA is "to discourage alcohol and drug abuse,
23 or at least not to encourage it with a permanent government subsidy."
24 Ball, 254 F.3d at 824.  Allowing a substance-abusing claimant who
25 presents inconclusive evidence of the materiality of alcohol or drug
26 abuse on his disability to collect benefits may provide him with an
27 incentive rather than discouragement to continue to abuse alcohol or
28 drugs because abstinence may resolve his disability limitations and

cause his application for benefits to be rejected. Parra, 481 F.3d at 749-50. Such a claimant would be guaranteed benefits only as long as his substance abuse continues and an award of benefits in such a situation would be a direct contravention of the stated purpose of the CAAA. Id.

Here, the ALJ's decision that plaintiff was not disabled was based on the findings of the consultative examiner, Ashraf Elmshat, M.D., who diagnosed plaintiff with alcohol dependency, alcohol-induced mood disorder, and depression. (AR at 216). Dr. Elmshat found that plaintiff had a long history of alcohol and marijuana dependence, and that his mood disorder was linked to his alcohol and marijuana abuse and to his physical condition. (AR at 217). Accordingly, the ALJ concluded that:

> Mentally, I see no credible evidence of anything other than polysubstance abuse with some depression. He admittedly is using alcohol on a regular basis with evidence of a long history of drug abuse. The other records and reports reflect refusal to be forthright about drug and alcohol abuse. The evidence in the record indicates that claimant is an unreliable historian and a symptom magnifier, and I see no reason his assertions in the mental realm are any more to be believed that those in the physical.

(AR at 320).

The ALJ did not err in giving Dr. Saeed's opinion limited probative weight. The ALJ's discussion of claimant's medical history and on-going substance abuse provides specific and legitimate support

8

for the ALJ's conclusion that (1) claimant would not be disabled if he stopped the substance use and (2) claimant's substance use disorder is a contributing factor material to the determination of disability. (See AR at 314-21).

Although the ALJ's statement that Dr. Saeed's opinion provides "no indication of what the plaintiff's functional ability is without polysubstance abuse" may be ambiguous, it does not trigger the ALJ's duty to resolve the question of what plaintiff's functional capacity would be absent polysubstance abuse because plaintiff bears the burden of resolving any ambiguity regarding this issue, not the ALJ. Dr. Saeed's inconclusive opinion does not satisfy plaintiff's burden to establish that polysubstance abuse is not a contributing factor material to his disability.

The Court acknowledges that substance abuse and disability are not mutually exclusive conditions and that where substance abuse contributes to a disability, it cannot be assumed that if the substance abuse ends that the disability will end as well. Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998); Parra, 481 F.3d at 748. However, the record offers no evidence to support the notion that plaintiff's disability would have remained absent polysubstance use.

Thus, the ALJ did not err in giving Dr. Saeed's opinion little probative weight and any ambiguity regarding plaintiff's disability absent polysubstance abuse did not trigger the ALJ's duty to develop the record.

**C.     THE ALJ'S CONSIDERATION OF LAY WITNESS TESTIMONY**

Plaintiff contends that the ALJ erred in failing to discuss the testimony of Kenneth Mummery, plaintiff's father, in his decision.

1    A person who is in a position to observe a claimant regularly and
2 testifies regarding their symptoms and ability to work is a competent
3 lay witness and an ALJ must consider his or her testimony. <u>Dodrill v.</u>
4 <u>Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). However, an ALJ does not
5 need to meet the impossible burden of mentioning every piece of
6 evidence presented in his or her decision. <u>Parks v. Sullivan</u>, 766 F.
7 Supp. 627, 635 (N.D. Ill. 1991); <u>Orcutt v. Barnhart</u>, 2005 U.S. Dist.
8 LEXIS 39731, *23 (Sept. 27, 2005). Silent disregard of competent lay
9 witness testimony is harmless if the Court can confidently conclude
10 that no reasonable ALJ, when fully crediting the testimony at issue,
11 could reach a different disability determination. <u>Stout v. Comm'r</u>,
12 454 F. 3d 1050, 1056 (9th Cir. 2006).
13    During the April 3, 2003 hearing, Kenneth Mummery testified that
14 he saw plaintiff approximately two to three times a month, and based
15 on his observations plaintiff seemed to be in pain on the left side of
16 his body, plaintiff's feet often were swollen, and plaintiff often
17 broke down crying. (AR at 42-45). In the July 16, 2003 decision, the
18 ALJ held that Kenneth Mummery's testimony was not persuasive because
19 he did not see the claimant on a daily basis and because he was biased
20 due to his parental acceptance of the claimant's complaints and, to
21 some degree, his desire to see his son obtain benefits. (AR at 20).
22 Kenneth Mummery did not testify at the second hearing, held on
23 December 20, 2005. The ALJ did not mention his testimony in the March
24 20, 2006 decision. The failure of the ALJ to mention the testimony of
25 Kenneth Mummery in his decision constitutes harmless error, if it is
26 error at all.
27    The ALJ was not required to explain why he did not rely on
28 Kenneth Mummery's testimony because Kenneth Mummery was not a

competent witness.  Specifically, he was not in a position to observe plaintiff regularly and provide testimony regarding plaintiff's symptoms and his ability to work.  Kenneth Mummery testified that he saw plaintiff less than once a week, on average.[1]  There is no indication of how much time he spent with plaintiff during these visits or under what conditions he observed plaintiff.[2]  Because Kenneth Mummery was not in a position to regularly observe plaintiff, plaintiff's symptoms and his ability to work, Kenneth Mummery was not a competent witness.  Therefore, the ALJ was not required to explain why he did not rely on Kenneth Mummery's testimony in his decision.

Even if Kenneth Mummery was a competent witness, any error that occurred as a result of the ALJ's failure to discuss his testimony was harmless.  Kenneth Mummery's testimony regarding plaintiff's symptoms was not particularly detailed and merely echoed plaintiff's own testimony regarding the pain and other symptoms that he experienced.  Even if the ALJ fully credited Kenneth Mummery's testimony, it would not change the disability determination in light of the substantial medical evidence and evidence of plaintiff's physical condition that supports the ALJ's conclusion and was corroborated by the testimony of Dr. Samuel Landau, a medical expert, at the hearing.  (See AR at 314-321, 542-548).

Any error committed by the ALJ was harmless.  No reasonable ALJ, when fully crediting Kenneth Mummery's testimony, could reach a

---

[1] At the hearing, Kenneth Mummery testified that he saw plaintiff "[a]bout twice to three times a month."  (AR at 42).

[2] When asked "[h]ow often, frequently, very infrequently?" he had observed plaintiff's feet swell in the last eight or nine months, he could not provide an answer.  (AR at 43).

different disability determination. In fact, as discussed above, the ALJ presiding over the April 3, 2002 hearing found Kenneth Mummery's testimony regarding plaintiff's symptoms and daily activities to be unpersuasive. (AR at 20). Thus, the Court finds that to the extent the ALJ erred by silently disregarding Kenneth Mummery's testimony, such error was harmless and cannot serve as the basis for remand. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**D.     THE ALJ'S DETERMINATION THAT SUITABLE OCCUPATIONS EXISTED GIVEN PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY**

In his third claim, plaintiff argues that the vocational expert's testimony adopted by the ALJ was inconsistent with plaintiff's residual functional capacity and the occupation descriptions contained in the United States Department of Labor Dictionary of Occupational Titles ("DOT").

The ALJ found that plaintiff has the following residual functional capacity:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform light work. Specifically, the claimant is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. Out of an 8-hour workday, the claimant is able to stand and/or walk for 2 hours with the use of a cane, as needed, and he is able to sit for 6 hours with normal breaks with provision to elevate his legs six inches above the floor, as needed. Pushing and pulling is consistent with weight limits. The

12

>claimant is able to climb stairs and occasionally stoop, bend, crawl, and crouch, but he is precluded from climbing ladders [sic] ropes, and scaffolds. He is precluded from balancing, walking on uneven surfaces, working at heights, or operating motorized equipment. The claimant must be able to work in an air-conditioned environment. Mentally, if the claimant stopped the substance abuse, I find the claimant is able to perform simple and complex work activity.

(AR at 315). The ALJ adopted the vocational expert's determination that if plaintiff abstained from substance use, he would have the ability to perform the duties required of unskilled light occupations such as a collator, labeler stamper, and hand packager. (AR at 321).

The DOT describes the duties and requirements of the numerous occupations that it chronicles. In doing so, the DOT assigns a General Education Development ("GED") scale to each occupation. Three sections comprise the GED: (1) reasoning development; (2) mathematical development; and (3) language development. For each occupation, the DOT assigns each of these three sections a number between one and six, with one representing the least complex and six representing the most complex.

The DOT also applies a strength factor to each occupation. The strength factor evaluates the level of controls necessary to perform the occupation. Controls entail the use of one or both arms or hands and/or one or both feet or legs to move controls on machinery or equipment. An occupation with a light strength factor requires:

13

>Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

The DOT identifies a collator, 653.687-010, as an occupation with a light strength factor. Thus, the ability to work as a collator requires plaintiff to perform the above-listed requirements. Plaintiff's residual functional capacity is consistent with the requirements of a light strength factor.

The DOT identifies collator as a level two reasoning development occupation, which requires the following skills: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." The DOT identifies collator as a level two mathematical development occupation, which requires the following skills: "Add, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal

fractions. Compute ratio, rate, and percent. Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." The DOT identifies collator as a level one language development occupation, which requires the following skills: "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses."

Plaintiff's residual functional capacity is consistent with the requirements of a collator. Plaintiff's residual functional capacity indicates that mentally, he is "able to perform simple and complex work activity," which indicates he can meet the reasoning development, mathematical development, and simple language development requirements of a collator. Because plaintiff's residual functional capacity is consistent with these requirements, there is no error.

The DOT identifies a Marker II, 920.687-126, also known as a labeler or stamper, as an occupation with a light strength factor. The DOT identifies Marker II, or labeler or stamper, as a level two reasoning occupation and a level one language development level. As discussed above, plaintiff's residual functional capacity is consistent with performance on this level. Unlike a collator, which requires a level two mathematical development, Marker II only requires mathematical development at a level one, that is, plaintiff must be able to add and subtract two digit numbers; multiply and divide 10's and 100's by 2, 3, 4, 5; perform the four basic arithmetic operations with coins as part of a dollar; and perform operations with units such

15

as cup, pint, and quart; inch, foot, and yard; and ounce and pound. As discussed above, these requirements are consistent with plaintiff's residual functional capacity. Therefore, there is no error.

Finally, the vocational expert testified that plaintiff could be employed as a hand packager. The DOT identifies hand packager, 920.587-018, as a level two reasoning occupation, a level one mathematical development occupation, and a level one language development level. As discussed above, plaintiff meets these requirements and performance at this level is consistent with his residual functional capacity. However, a hand packager is a medium strength occupation. In order to perform a medium strength occupation, plaintiff must be capable of the following: "Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work." This strength requirement is inconsistent with plaintiff's residual functional capacity. Therefore, the ALJ's finding that plaintiff could work as a hand packager was in error.

However, this error is harmless. While the vocational expert's testimony concerning plaintiff's ability to perform the duties required of a hand packager is inconsistent with the plaintiff's residual functional capacity, his testimony concerning plaintiff's ability to engage in employment as a collator or a labeler or stamper, also know as Marker II, is consistent with the ALJ's residual functional capacity. The vocational expert testified that there are approximately 11,260 collator positions in California, and 11,000 for a labeler or stamper in California. Because defendant met his burden

of demonstrating that other work exists in significant numbers in the national economy that the plaintiff can do, given his residual functional capacity, age, education and work experience, the error resulting from the improper determination that plaintiff could perform the work of a hand packager is harmless. Thus, it cannot serve as grounds for remand. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards. The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration. LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 13, 2007

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE